Good morning, distinguished panel. Good morning, Your Honours. Could you pull the mic up so we can hear you? A bit closer, okay. Is my voice clear now? Good morning, distinguished panel. Good morning, Your Honours. My name is Aded Ayoido. I represent the petitioner. And I crave the court's indulgence to present my case this morning. Yes, go right ahead. Yes, I'm... This courtroom's a little echoey, so if you can all, for everyone present, if you can try to speak into the microphone and also not speak too quickly, that helps us. It's just echoey back here. Okay, wonderful. Thank you. Yes, I'm here today to present the petitioner's case. Basically, it's a case in which it's a motion to reopen which was denied by the Board of Appeals, the Board of Immigration Appeals, the Board henceforth. The petitioner has sought to have his case reopened based on his activities in a pro-democracy organization in the United States. What is your best argument for remand? The best argument, to tell you the truth, Your Honour, would be the case of Chandra v. Holder. This case is, like, virtually identical in facts. I'm very happy that the court has brought this to our attention, that we should be prepared to address this. But if we look at the facts of this case and the case of Chandra v. Holder, we will see that the facts in this case are virtually identical in nearly every respect, the only difference being that one is based on religion and one is based on a political opinion, being a member of a pro-democracy organization. The court did remand that back to the VIA, and I would actually point that case out would be my basis to have this case remanded also. Counsel, could you look at the – I'm referring to the affidavit filed by your client, the declaration. What exactly – what facts exactly are you relying on to show the change in country conditions? Within the record, at AR 109, there is a letter from his mother, which indicates that the authorities in China have come to his home in China seeking him and been harassing his family in China. Now, in order to change circumstances, also the change in country conditions, the petitioner himself must show that there is a kind of like – there is a coincidence of his change in circumstances and the change in the country conditions. If we look at that, we see that there is a coincidence here. The petitioner's change in circumstances is based on the change in country conditions in China. I'm sure the government argues that – well, I mean, sorry, the VIA argues that the conditions haven't changed, but how is that true? Well, the – what do we do with the fact that the VIA in this particular case found that broader country conditions have not changed based on the country report? So let's assume that everything that your client indicates in this affidavit is true. There is increased persecution of his family members, and presumably if he were returned to his home country, there would be increased persecution of him by virtue of his political activities. Yes. If we accept the VIA's conclusion that there's no broader change in country conditions, then would your client lose? Yes, he would, because he would not have had the – he would not be provided with the opportunity to present – I mean, the VIA says, well, the country reports say this. We have one from when – from 2002. Let's – that really wasn't in the record. We can only go on what's in the record, but the court does take administrative notice of these facts. But 2002, which is in the record, which the petitioner submitted to the court, and the 2014 show, yes, that the government – well, there are changes, there are material changes in the sense that the government has increased its persecution of CDP members that return to China. Even the CDP members within China – Can I interrupt you there? Yes. Because that's the point I've been waiting to hear about. What shows me that the persecution of CDP members has increased since the time of the first application? I think that's a pivotal point. Yes. In the country reports, if you look at from 2002 to 2014, you'll note that there's been an increase in the number of the CDP members that have been arrested. Even the ex-CDP members have been arrested. There are these psychiatric hospitals which they commit people to, political dissidents in China. Actually, the number of these institutions has actually increased, and the number of people who are CDP members have also – Where in the record do we see that increase? Can you give me a citation to the page of the record? Yes, it's at – It's the – I don't have the page number. It was referenced in the record at page 3. In page 4, the BIA's decision, it notes that it says Exhibit 3. I'm looking for this citation. But in – I don't have the exact reference here, but it's part of the record. It's a country report, which is the year 2002. What are you referring to in the BIA decision? It says on page 4, AR4, it says, or they say, Evidence submitted in motion does not show conditions of materially change since respondents hearing, in this case in 2002. And then they cite Exhibit 3 at 6. Yes, at 6. And then they say the country conditions in China appear substantially the same as the conditions existing at the time of the hearing. Yes. There it indicates that – But where's the – what cite? Is it Exhibit 3 at 6? Yes, and that's – it wasn't actually in the administrative record, even though the BIA cites to it. So there we have a problem also because the BIA is citing to that document, which isn't in the record, then how can we – how can the court make that – how can the BIA make that determination? The BIA hasn't taken everything into consideration in making that determination. It just makes a perfunctory reference to that, which doesn't exist in the record. But the citation, as I read it, counsel, talks about very harsh treatment in 2002 and that the harsh treatment continues. I don't see indication that the BIA thought the harsh treatment had worsened. Yes. But even arguing that the respondent wasn't a CDP member at that time. In 2002. In 2002. Right. So other – like the Seventh Circuit, for instance, has said that going back to these kind of situations where the person hasn't been – I mean, hasn't been seeking a new grounds for relief, we go with the most lenient standard that would have applied then. If he was a CDP member then, would he have been eligible for relief? The answer would have been yes. That's your reading of Chandra? Yes. Did you want to reserve some time, counsel? Yes. Okay. We'll hear from opposing counsel then, please. Good morning. Good morning, Your Honors. I'm Anita Natumah on behalf of the Attorney General. Your Honors, the Board did not abuse its considerable discretion in denying Mr. Chen's untimely motion to reopen. I would just like to, for purposes of the record, make one correction, which I believe is a very significant one. Opposing counsel refers to the BIA's reference to Exhibit 3, Page 6, and states that that piece of evidence is not in the record. It actually is in the record. It starts at AR 386, and the specific reference, Page 6, is at AR 391, and it's an entire paragraph plus more, which specifically refers to the CDP and its treatment of political activists in China. What's the date of that report? Your Honor, that is the 2002 – sorry, the 2001 country report, which was published on March 4, 2002. And despite the fact that Mr. Chen had not been a member of the CDP, he was not a member at that time, that is the evidence of country conditions that was in the record in 2002, and that's why the BIA used that to reevaluate or to compare, rather, country conditions in 2011. How could the 2002 report provide any information other than a baseline? What were they looking at it at to support the notion that it hadn't increased? So this record that I'm referencing, Exhibit 3 at Page 6, is at AR 391. Yes. In the record, and it speaks to the CDP. That's what I'm asking. This was my original question. What was the date of Exhibit 3? March 4, 2002, Your Honor. Okay. So let me restate my question. They are citing a 2002 report to show that conditions have not changed. As of when? As of 2011, when Mr. Okay, so now that is nine years before. Where is the information in the record that shows what the level of persecution of CDP members is in 2011? How can they? They've got a baseline from 2002. Where did they get the support for the statement that there hasn't been any change in nine years? Now I understand Your Honor's questions. My apology. That evidence was based on the country conditions submitted by Mr. Chen with his motion to reopen, and that's in the record. And that's the 2010 country report, which is in the record. That's what the board used to compare the country conditions in 2011 when Mr. Chen filed his motion to reopen, as opposed to country conditions that were prevalent at the time when he had his first hearing before the immigration judge. Counsel, I'm concerned about the BIA's decision because I don't think it makes any mention of Mr. Chen's affidavit at all. Or his brother's. Actually, Your Honor, it's on page three of the agency decision. It specifically states that the agency, and this is the third paragraph down, the one that starts, we have considered the statements from Respondent's mother, that one. You're asking about the affidavit for his brother. Is that correct? Well, there's two different questions. Okay. My first concern, to take them one at a time, is I don't see anywhere where the BIA decided that Mr. Chen's affidavit was inherently unbelievable. And I think the law is that unless they make that finding, they have to deem it as true, except that is true because we're here on a motion to reopen, and I don't see where they did that. But I'm ready to be corrected if you can show me where they considered his affidavit. So they did consider it in that same paragraph where they refer to tabs P through U, and then also where they considered it on page three of the record, in that third paragraph, where they refer to evidence of his membership in the CVP, and they refer to tab C, E, H, I, and O. And Mr. Chen. It says the respondent states that he joined the CVP in the U.S., and his membership and party activities are supported by documentation. They reference the various exhibits that he submitted. Yes, Your Honor. Tab C is the petitioner's affidavit, and that's specifically referenced. Is there any place where they found it to be inherently unbelievable? No, Your Honor, not to my reading of the agency decision. Okay. So when we get to the second page and the conclusion, I don't see reference there. It says we've considered the statements from respondent's mother and classmate. They give the reasons for not giving that much weight. Yes, Your Honor. And the reasons they say it are because they were unsworn, do not provide specific facts indicating threats to the respondent, and were obtained for purposes of these removal proceedings. And the petitioner's, for instance, petitioner's mother's affidavit, substantial evidence would support that finding. The second paragraph of the affidavit states, I have no idea how the Chinese government know that the fact that Chen Feng joined the CDP. The policeman from the local police precinct came to my home and inquired a lot of information. It doesn't state information about what. They went through my staff at home. I think she means stuff. It doesn't say what stuff. It doesn't state a date that the police came to her house. It says they also took away pictures sent by Mr. Chen. It doesn't state what pictures. It doesn't state when they took away these pictures. And that would support the BIE's finding that they do not provide specific facts to support Mr. Cheng's motion to reopen. And, again, just to go back to Your Honor's point about the changed country conditions, there's ample evidence in the record to support the finding that the agency made about a lack of changed country conditions. And I can give some specific citations from the record if that would be helpful. Now, are you going to do that or? With your permission, Your Honor. You're almost out of time. I'd like you to address, though, so we don't just get hung up on country conditions, because the BIA said that basically all he's established, in fact, it says it's well settled that a change in personal circumstances does not establish an exception to the restrictions. Yes, Your Honor. And so Chandra, under Chandra, it would perhaps be an abuse of discretion if the agency had stopped there and said, well, this is the only factor that would mitigate or, you know, prevent the petitioner from showing these changed country conditions. But the agency went further on page four where they separately and expressly did an analysis as to the changed country conditions in light of Mr. Chen's membership to the CDP. And they found that based on the evidence that there were no material changed country conditions, and that's the first paragraph on AR4 where the agency made that finding. And so I would submit that there is no abuse of discretion because the agency did look at these changed country conditions in light of the change in personal circumstances, which is what Chandra, which is the holding in Chandra. Well, they didn't have the benefit of Chandra, correct? That is correct, Your Honor. But notwithstanding that, they still made the finding about the personal circumstances and then did a separate analysis as to the changed country conditions, which is a specific, that's what the regulation stands for. So it's your position, I take it, that we should decide that they did consider Mr. Chen's affidavit and that they did not, because they did not deem it inherently unbelievable, that they deemed it believable, and that given the facts that he asserts there, even under Chandra, he didn't make the requisite showing. I think that has to be your position. But they didn't have Chandra. That is correct, Your Honor. But that's your position. That is absolutely correct. And again, just to go to the personal circumstances. Even in Chandra, though, there was evidence presented by the petitioner of broader country conditions changed, increased persecution of Christians. Here, the BIA did make a finding that there are no broader country conditions that have changed since the time the petitioner's removal proceedings first occurred. I'm sorry. Is that right? I'm sorry. So what the BIA did is they took the 2000 and... Two country conditions. 2001, I think, country report. Yes. And they compared that to the 2010 country conditions report, and they made a finding that there's been no material change in country conditions in China with regard to persecution of members of the CDP. Exactly. Precisely. We have to review that finding with substantial deference to the BIA. Absolutely, Your Honor. But yet, at the time that they made this ruling, they didn't have the benefit of Chandra. Yes, that was an admirable foresight. Tell me why, despite Chandra, this case shouldn't be remanded for the BIA to take another look at it. Despite the fact that the BIA has, without even having Chandra followed Chandra and followed the holding in Chandra and not abused it... Despite not having the benefit of Chandra, why is it that this case shouldn't be remanded? Why should it be remanded? Why shouldn't it be remanded so that the BIA can take another look at his personal circumstances in light of Chandra? Because it wouldn't be worthwhile, Your Honor, even if it was remanded, which is not our position. It would still be the same conclusion that the agency made the personal circumstances finding and then they still applied the regulation as to the changed country conditions, comparing conditions in 2001 and 2002 when Mr. Chen was previously before the immigration judge and comparing that to country conditions in 2010-2011. I don't know how you can make that such an absolute statement because if I'm sitting on the BIA and all I think is relevant is conditions changed in China, the political conditions, regardless of the individual circumstances of the petitioner before me, I would come to the conclusion that you suggest. But under the law of Chandra, a change in personal circumstances is as relevant as country conditions. So now I have to weigh whether given his individual circumstances, his past record, his notoriety apparently, now has he been exposed to more likelihood of personal violence or persecution directed at him. There's no such analysis in the BIA's opinion because they dismissed his personal circumstances, his individualized circumstance as not being relevant. So it seems to me that it would be logical to send back to the BIA so they could make the finding. I don't know how you can assume what that finding would be. If I may respond to that, Your Honor, I respectfully disagree with that in the sense that I would say, I would point to, again, the record at page 3 where even though I think when you look at the decision as a whole, even though the agency did make a finding as to his personal circumstances as a finding, they still went further and looked at those personal circumstances in light of the country conditions at the time. Point me to the exact language. On AR4, that top paragraph where it states, the evidence submitted with the motion, however, does not show that conditions in China have materially changed since the respondents hearing in this case in 2012. That goes to country conditions. It doesn't say anything about his personal situation. He had a history. He had a history. How do we know that that history, combined with his new status of being a CDP member, doesn't elevate his exposure to persecution, even under the existing continuous country conditions? Where does the BI say, even though he became a member of the CDP, whatever persecution risks he had before have not been enhanced now because he has taken an additional step to join a controversial party? That would be the analysis I'd be looking for in the BI's decision. And, of course, they didn't make that analysis because they ruled it out as a matter of law. May I respond to that, Your Honor? Briefly. Just again, I would point to the fact that they looked at it materially, and then the next sentence goes on again to refer to the treatment of CDP members. The fact that the agency looked at it materially, and the only material change or fact that would be different in 2011 would be the fact that he's a member of the CDP. And so I would submit that the agency did, in fact, take that into account in its analysis of changed country conditions. It wasn't a separate and isolated finding of only changed country conditions. It's based on the fact that he's now a member of the CDP. Counsel, you're significantly over time. Thank you so much for your argument. Thank you, Your Honors. And so I would ask that you deny the petition for review. Thank you. Counsel, you reserved a bit of time for rebuttal. Yes. I returned to Chandra v. Holder at page number 8, and I'm quoting from Chandra v. Holder, and this is they're referring to a Seventh Circuit case, which is Hsu Han Liu, which is 718F3D at 710 through 713. And I quote, after reviewing the new evidence, the court determined that because the petitioner's conversion to Christianity, we could juxtapose Christianity with a CDP activist, placed him instead of her at greater risk at the time of his motion to reopen that he would have faced had he been a CDP activist. At the time of his removal, hearing in, which was about 2002, which is kind of coincides with this. So basically what the court is saying is, sure. I was actually on the Chandra panel, Counsel, and I think the biggest hurdle that you are going to have and what distinguishes Chandra from the facts of this case is that in Chandra, there was a showing of broader changed country conditions that the V.A.A. failed to take into account in light of his personal circumstances. And here, it seems like we have to defer to the V.A.A.'s conclusion that there's no, there's been no broader changed country conditions, albeit there's change in his personal circumstances. And may I respond to that? In quoting from also from that, the same Chandra, you being on that panel and this decision, you quoted from the Sixth Circuit saying that the Sixth Circuit has also recognized that a change in personal circumstances this time around, when accompanied by a change in country conditions, may warrant a grant of a motion to reopen removal proceedings. So now what we have is a perfect storm of the individual with personal circumstances that are now coincides with the changed country conditions. Now, if you go back to the Seventh Circuit, they were saying, well, whatever existed then didn't exist now. And given what had existed then, if he had applied then, he would have still, he would have been given a favorable disposition in regards to what his claim is at this present time. Counsel, you're out of time. Thank you. We thank both counsel for your arguments. Case No. 12-70164 will be submitted.
judges: Fisher, Christen, Nguyen